B 104
(Rev. 2/92)   **ADVERSARY PROCEEDING COVER SHEET**
(Instructions on Reverse)

| | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

**PLAINTIFFS**

Thomas W. Ohick, pro se

**DEFENDANTS**

See Attached List

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

4014 Crestview Ave
Easton, Pa 18045
610 253 8040

**ATTORNEYS** (If Known)

unknown

**PARTY** (Check one box only)   ☐ 1. U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☐ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Breach of Contract

**NATURE OF SUIT**
(Check the one most appropriate box only.)

☒ 454 To Recover Money or Property
☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property
☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property
☐ 424 To object or to revoke a discharge 11 U.S.C. §727

☐ 455 To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan
☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523
☐ 434 To obtain an injunction or other equitable relief
☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan

☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action
☐ 459 To determine a claim or cause of action removed to a bankruptcy court
☐ 498 Other (specify)

**ORIGIN OF PROCEEDINGS** (Check one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed Proceeding   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another Bankruptcy Court   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

| **DEMAND** | **NEAREST THOUSAND** $ 500,000 | **OTHER RELIEF SOUGHT** Production of Documents | ☐ JURY DEMAND |
|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR Thomas W. Ohick | BANKRUPTCY CASE NO. 96-22103 |
|---|---|

| DISTRICT IN WHICH CASE IS PENDING Eastern Dist of Pa | DIVISIONAL OFFICE Reading Pa | NAME OF JUDGE Twardowsky |
|---|---|---|

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF T. W. Ohick | DEFENDANT Same as List | ADVERSARY PROCEEDING NO. 96-2349 |
|---|---|---|

| DISTRICT E D of Pa | DIVISIONAL OFFICE Reading | NAME OF JUDGE Twardowsky |
|---|---|---|

**FILING FEE** (Check one box only.)   ☐ FEE ATTACHED   ☒ FEE NOT REQUIRED   ☐ FEE IS DEFERRED

| DATE 5/26/05 | PRINT NAME T. W. Ohick | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS W OLICK & KATHRYN A OLICK
      Debtors                                 Bnk NO. 96-22123

---

THOMAS W OLICK
       PLAINTIFF
         vs
CHESTER SEBASTIANELLI, LASLO ZAMOLYI,     Adv No
DANIEL STEVENS, Richard O'Hay,
MARLIN STOCK, ANTHONY BORELLI,       Jury Trial Demanded
ELIZABETH BORELLI, GEORGE MOSELLI,
BESSIE MOSELLI, JOHN GALLERY III,
ROBERT EPISCOPO, ANN EPISCOPO,
JOHN CARROLL JR, KATHRYN CARROLL,
PATRICIA KLASSEN, GEORGE KLASSEN,
JoANN ZAMOLYI, MARIA GOMBAR,
DANIEL LUCHANSKY, LORA LUCHANSKY,
Estate of MARY JANE GALLERY,
JOHN DAVIDUKE, DEBORAH DAVIDUKE,
MICHAEL SEKSINSKY, NANCY SEKSINSKY,
MICHAEL DOWD, TERRY NEWHART,
GLENN MILLER, HELEN MILLER,
JOANN LANE, RICHARD SCOTT LANE,
JOHN SCHMIDT, WALTER VACULLA,
GEORGE ROSTAS, Albert Evans, Bruce
Wishnesky, GEORGE SMITH, Margaret
Sebastianelli and Mary Ann Kametz
                   DEFENDANTS

## ADVERSARY COMPLAINT

Debtor/Plaintiff, THOMAS W OLICK brings a cause of action against the Defendants for Breach of Contract, to recover damages from fraud, and to seek other damages, as follows:

### I.  Parties

1. Plaintiff, Thomas W Olick, is an adult individual who resides at 4014 Crestview Ave, Easton, Pa 18042.

2. CHESTER and Margaret SEBASTIANELLI are adult married individual who reside at 1185 West State St, Archbald, Pa 18403.

3. LASLO and JoAnn ZAMOLYI are adult married individuals who reside at 414 Eagle View Dr. Bethlehem Pa 18018.

4. DANIEL STEVENS is an adult individual who resides at 560 Main St, Slatington, Pa 18080

(1)

5. RICHARD O'HAY is an adult individual who resides at 4038 Meadow Avenue, Easton, Pa 18045.

6. MARLIN STOCK is an adult individual who resides at 221 East Tammany St, Orwigsburg, Pa 17961.

7. ANTHONY and Elizabeth BORELLI are married adult individuals who reside at 110 West Johnston St, Allentown, Pa 18103.

8. Walter Vaculla is an adult individual who resides at R.D. #1 Box 1244, Schuylkill Haven, Pa. 17972.

9. GEORGE MOSELLI is an adult individual who resides at 1535 Washington Blvd., Easton, Pa 18042.

10. BESSIE MOSELLI is an adult individual who resides at 1535 Washington Blvd., Easton, Pa 18042.

11. JOHN GALLERY III is an adult individual who resides at 642 Walnut St, Catasauqua, Pa. 18032.

12. ROBERT and ANN EPISCOPO are adult individuals whose current address is unknown but each of whom work at and may be served at Alvin Butz Inc., Rt 309 North of 22 P.O. Box 509, Allentown, Pa 18105.

13. JOHN and KATHRYN CARROLL JR are married adult individuals who reside at R.D. #1 Box 1161, Pottsville, Pa. 17901.

14. Patricia Klassen and GEORGE KLASSEN are adult married individual who reside at 220 South 2th St., Pottsville, Pa 17901.

15. MARIA GOMBAR is an adult individual whose last known address was 6965 Helsinki Sq., Bethlehem, Pa 18017.

16. DANIEL and LORA LUCHANSKY are married adult individuals who reside at 2047 Whitehall St. Allentown, Pa

17. The Estate of MARY JANE GALLERY may be served on John Gallery III and JoAnn Lane who are the Executors thereof.

18. JOHN SCHMIDT is an adult individual who resides at 166 West Brook Dr, Clifton Heights, Pa.

19. JOHN and DEBORAH DAVIDUKE are married adult individuals who reside at 21 Pierce St, Enfield Ct. 06082.

20. MICHAEL and NANCY SEKSINSKY are married adult individuals who reside at 605 W Lafayette St, Easton, Pa 18042.

(2)

21. MICHAEL DOWD is an adult individual who resides at 25 Chestnut Ridge Circle, Easton, Pa 18042.

22. TERRY NEWHART is an adult individual who resides at 725 Cattell Street, Easton, Pa 18042.

23. GLENN and Helen MILLER are married adult individuals who reside at R.D. #1 Box 1472, Bethel, Pa.

24. JOANN and RICHARD SCOTT LANE are married adult individuals who reside at 4323 Bachman Street, Schnecksville, Pa 18078.

25. Mary Ann Kametz is an adult individual who resides at 409 16 th Avenue, Bethlehem, Pa 18018.

26. George Rostas is an adult individual who resides at 1004 W. 15 th St. Hazelton, Pa 18201.

27. Albert Evans is an adult individual and attorney, who was acting as an agent of Riley & Fanelli P.C. and may be served at its officces at 1 Mahontongo St, Pottsville, Pa 17901.

28. Bruce Wishnesky is an adult individual whose residence is unknown, but who is employed by Albert Evans law firm and may be served at 1 Mahontongo St, Pottsville, Pa 17901.

29. George Smith is an adult individual who resides at R.D. #1 Box 1167, Schuylkill Haven, Pa 17972

II. Jurisdiction

30. Jurisdiction is based upon 28 U.S.C.A. 1334 and Section 157(b)(2) of 28 U.S.C.A. 28 subsection (E) and is proper in the Eastern District of Pennsylvania.

31. This is a "core" proceeding in that the Plaintiff seeks damages for fraudulent inducement to enter into a Contract (i.e. a 1998 Stipulation of Settlement of an Adversary Complaint in this Bankruptcy - 96-2349) and a breach thereof of the Bankruptcy Estate, and to collect damages for fraud and other damages which inure to the benefit of the Bankruptcy Estate.

(3)

### III. Venue

32. The Plaintiff avers that Venue is proper in the Eastern
District of Pennsylvania pursuant to Section 1408 (1) of
28 U.S.C.A.

33. Venue is proper in the Eastern District of Pennsylvania
in that the Plaintiff and most of the Defendants are
and/or were residents, during all the relevant times, in
this jurisdiction; have submitted to this jurisdiction by
appearing and filing Creditors' Claims against the
Defendant in Bankruptcy Proceedings 93-23114 and/or 96-
22123; have entered into and breached agreements which
became orders of the courts in the Eastern District of
Pennsylvania; Defendants have filed dismissed litigations
against the Plaintiff in this venue and jurisdiction for
and the Plaintiff seeks to recover damages and relief
owed the Bankruptcy Estate from Contracts which were
executed and/or produced in the Eastern District of Pa.

### JURY TRIAL

34. Pursuant to the Seventh Amendment, the Plaintiff demands
that his Complaint be heard by Jury Trial (492 U.S. at 64,
109 S Ct at 2802, 106 L. Ed. 2d at 55; 481 U.S. 412, 417-
18, 107 S.Ct. 1831, 1835, 95 L.Ed. 2d 365 (1987)) for all
issues so triable.

### INDIVIDUAL ALLEGATIONS

35. In return for the release of his claims against them in
Adversary Proceeding 96-2349, Bnkr. 96-22123 (the
"Adversary Proceeding"), Defendants listed in paragraphs

4

2 through 29 (hereafter "Settling Defendants") entered into a "Stipulation of Settlement" with the Plaintiff Thomas W. Olick, which was made an order of that Court.

36. At para. 11 p. 10 of the Stipulation of Settlement, the Settling Parties:

> "agree(d) to the production of any and all non-priviledged documents in the custody, possession or control of Albert Evans and the Firm of Riley & Fanelli, P.C. ("Riley and Fanelli") which relate to any claim against Olick or the settlement of any such claim, or any non-priviledged communications with any defendant in the Adversary Proceeding or with John Hancock Mutual Life Insurance Company, any subsidiary thereof, or any agent or representative thereof, concerning any claim against Olick or the settlement of any such claim. Olick agrees that Evans, or the firm of Riley and Fanelli, may withhold from this production any document that any Settling Party may be legally disabled from disclosing as a consequence of any confidentiality agreement or order confidentially entered by a court, provided that any and all such documents are identified in writing, in a manner sufficient to specify them in a subpoena, and that the agreement or order under which the documents are claimed to be confidential is identified. Production of documents under this paragraph shall be made within three (3) business days of the execution of this Stipulation, or as soon thereafter as Olick reasonably may request, at which time Olick shall be furnished with a listing of all documents not disclosed on a claim of confidentiality."

37. Olick performed as required by the Stipulation of Settlement.

38. However, the Settling Defendants refused and continued to refuse to perform as required by the Stipulation of Settlement, including, but not limited to:

   a) they had refused and continue to refuse to furnish Olick "with a listing of all documents not disclosed on a claim of confidentiality;"

   b) they destroyed and/or "lost" specific documents required by the Stipulation of Settlement and which

5

were produced in their litigation against Olick in 92-5907 Carroll v Joseph Corby, Thomas Olick, John Hancock E.D. of Pa. (the "Carroll Litigation"), which were heretofore hidden from Olick, including but not limited to the audio tapes of the Capital Management Group ("CMG") Partnership Meetings, the letters produced at Anthony Borrelli's deposition and authored by the other Settling Defendants; correspondence signed by JoAnn Lane to various persons which identified John Carroll as the newly elected vice-president of Capital Management Group Inc., etc.;

c) agreements between the Settling Defendants and Joseph Corby (the prime defendant in the Carroll litigation) to not seek damages from him if he would provide testimony to their liking;

d) certain non-prividledged and/or non-confidential documentws, including but not limited to payments made by the Settling Defendants, directly and/or through Riley & Fanelli, to Joseph Corby in exchange for his testimony in the Carroll Litigation;

39. Olick previously sough a court order from this Bankruptcy Court compelling production of the above documents.

40. However, the Settling Defendants and John Hancock Insurance Company requested that the matter be deferred to the NASD Arbitration Panel in Olick v Hancock NASD #96-01247.

41. The Court referred the matter to the aforementioned NASD Arbitration Panel.

42. However, immediately thereafter, John Hancock moved that the District Court in the Eastern District of Pa. to enjoin the aforementioned NASD arbitration alleging that the matter should have been brought in this Bankruptcy Court and that the NASD did not have jurisdiction over the Plaintiff's disputes.

43. The District Court enjoined the NASD arbitration.

6

44. The Plaintiff timely appealed that order.

45. However, the higher courts eventually opined that the disputes are not subject to NASD arbitration and should be heard in the Plaintiff's Bankruptcy.

46. Previously, the Settling Defendants concealed from Olick their agreements with and payments to Joseph Corby.

47. The Corby Agreements and the Settling Defendants' payments to him are not "privileged documents" and are not subject to any confidentiality agreement or order.

48. Any confidentiality agreement between the Settling Defendants were to be subject to discovery by the terms of the court orders ending the Carroll Litigation if Hancock sought damages from the Plaintiff.

49. The Settling Defendants and John Hancock have disclosed to the Plaintiff in this court that the Carroll Litigation's settlement involved payments which were disclosed in the Settling Defendants' creditors claims in Plaintiff's Bankruptcy and that the agreement called for the Settling Defendants to assign their claims to Hancock and pursue their against the Plaintiff as its proxy.

50. Therefore, any confidentiality of the Carroll Litigation's settlement has been waived by the aforementioned disclosures by the Settling Defendants.

### I. Breach of Contract
### Olick v Settling Defendants

51. Plaintiff incorporates by reference, as if stated in their entirety herein, his allegations in paragraph 1 through 50.

7

52. As part of the settlement negotiations in the Adversary Proceeding, Plaintiff requested and was assured by the Settling Parties, particularly, Albert Evans, that the aforementioned documents, including but not limited to the audio tapes, letters authored by JoAnn Lane and communications produced by Anthony Borrelli, would be produced after signing the Stipulation of Settlement.

53. Albert Evans, as counsel for the Settling Defendants, created the Stipulation of Settlement and the Settling Defendants are strictly bound by the terms therein.

53. After Plaintiff sought to compel this production of the aforementioned documents, Albert Evans testified that:

    a) the documents and audio tapes were destroyed and/or lost;

    b) production of a list of documents withheld as confidential and/or privileged would be arduous and that the Settling Defendants refused to produce the list;

54. No Settling Defendant claimed that their heretofore concealed agreements with and/or payments to Joseph Corby in exchange for his testimony were privileged and/or confidential.

55. It was illegal and/or unethical for Albert Evans, Riley & Fanelli and the Settling Defendants to enter into an agreement with and/or to pay Joseph Corby in the Carroll Litigation to give false testimony about the Plaintiff and/or parties in that litigation.

56. The Settling Defendants testified in NASD 94-05051 that they made the investment decisions, controlled the

management and finances of CMG, converted the tens of thousands of dollars of the partnerships' income for their own benefit without regards to debts owed to the Plaintiff and/or other members of the partnership.

57. The Plaintiff claimed that Joseph DiMento, his agent Thomas Nikles and the DiMento John Hancock Agency (the Nikles Defendants) entered into an agreement to file false claims against the Plaintiff in exchange for payments for alleged securities sold to them.

58. The Settling Defendants filed claims against Olick in 1992 in the Carroll and other litigations mentioned in the Stipulation of Settlement.

59. However, two years earlier, Hancock's own internal investigation determined in 1990 that CMG was not a security but was a general partnership controlled by various persons included within the Settling Parties.

60. One year prior to the filing of the aforementioned lawsuits, the NASD had conducted an investigation that concluded that CMG was not a security but was rather a general partnership owned and controlled by the various persons included within the Settling Parties.

61. Hancock terminated MS. Kimberly Spense for her actions in concert with Thomas Nikles in the aforementioned scheme to file false claims against the Plaintiff.

62. Thomas Nikles gave sworn testimony in the NASD Arbitration, and during depositions, that he knew that CMG was not a security, that various Hancock sponsored

9

investments were suitable for the Settling Parties, but that he, under the direction of Hancock and the Nikles Defendants, made statements to the contrary to the Settling Defendants to obtain future business from the Settling Defendants and to defame the Plaintiff.

61. The 94-05051 NASD Arbitration Panel found in favor of the Plaintiff and against the Nikles Defendants in an amount eventually paid in excess $100,000.

62. The Plaintiff had previously brought suit against John Hancock for the Hancock sponsored investments which were also purchased by the Settling Defendants.

63. During discovery, the Plaintiff found Hancock's internal communications which directed that negative information be concealed from its agents, which included the Plaintiff, that the were not sound and that their marketing materials were false and deceptive.

64. In 1994, the NASD arbitration panel found against Hancock and in favor of the Plaintiff and his family in an amount over $75,000 for the above deceptive selling tactics.

65. The NASD also subsequently fined Hancock an additional $100,000 in sanctions (i.e. based upon the documents the Plaintiff provided) declaring that Hancock had deliberately provided to its agents misleading and deceptive marketing materials.

66. The Plaintiff also provided to certain class action attorneys information regarding these aforementioned securities and Hancock life insurance policies that

10

showed that Hancock engaged in massive deceptive and false marketing of its products to the public.

67. Those class actions were eventually settled by Hancock for an amount in excess of $400,000,000.

68. The Settling Defendants knew of the aforementioned class actions help provided by the Plaintiff before it entered into agreements with the Nikles Defendants to defame and file false lawsuits against the Plaintiff in the Carroll Litigation and as creditors claims in this Bankruptcy.

69. The aforementioned audio tapes contained various heated discussions between the Plaintiff and members of the Settling Defendants which revolved around whether CMG should engage in a policy best described as "the end justifies the means."

70. In those recordings, the Plaintiff refused to comply with various Settling Defendants' insistence that he engage in activities which he clearly found to be illegal and/or unethical even if it would benefit the Settling Defendants.

71. Also contained within those audio tapes were contentions by members of the Settling Defendants which asserted that they were the control persons of the CMG and that the Plaintiff was required to comply with their above illegal and/or unethical demands, or if not, he would be replaced by someone who would do their bidding.

72. Since the Settling Defendants have destroyed and/or lost the audio tapes and various other documents, it is now

11

impossible for them to comply with the requirements of the Stipulation of Settlement.

73. The Settling Defendants representations that they would produce these aforementioned documents, a list of withheld "confidential" and/or "privileged" documents was known to be false when the Stipulation of Settlement was drafted and signed by them.

74. Therefore, the Settling Defendants entered into the Stipulation of Settlement in Bad Faith and had no intention with complying with its provisions.

75. Although the Settling Defendants agreed in the Stipulation of Settlement to voluntarily appear at the Nikles NASD arbitration without the necessity of a subpoena, they refused to appear voluntarily, demanded that they be subpoenaed and demanded that they be paid a fee for appearing.

76. All of the above are wilful and intentional breaches of the Settlement Agreement.

77. As consideration in the Stipulation of Settlement, the Plaintiff surrendered claims for damages in excess of $500,000 sought against the Settling Defendants in the Adversary Proceeding.

78. Those surrendered claims were strong and would readily have prevailed because the Settling Defendants had filed false and settled creditors' claims as proxy's for John Hancock in the Plaintiff's bankruptcies 93-22123 and 96-22124 for the sole purpose of vexation and harassment

12

without regards for the rights and property of the Plaintiff and/or whether their claims had any merit.

79. As part of this scheme with the Nikles Defendants, the Settling Defendants caused to be published in newspaper of wide circulation, their false and malicious allegations which they knew, and/or should have known, to be false and which were designed to  damage the Plaintiff in his property, reputation and his ability to earn a living in the insurance and securities industries.

80. As a result of the aforementioned activities the Plaintiff has been damaged in an amount in excess of $500,000.

81. By breaching the Stipulation of Settlement, the Settling Defendants pursued an intentional course of action to conceal the aforementioned illegal activities of themselves, the Nikles Defendants, John Hancock and others.

82. The breach of contract was designed to perpetuate the defamation and damages to the Plaintiff and to prevent him (and his family) from maintaining his prior employment and earning.

83. Because of the aforementioned activities of the Settling Defendants and their breaches of contract, the Plaintiff has incurred legal fees and expenses in excess of $100,000.

84. Because of the breaches of contract, the Plaintiff has been unable to timely obtain documents and evidence which

13

would have aided him in suits for damages against John Hancock and thus the Plaintiff has since been unable to collect damages in excess of $500,000.

Therefore, the Plaintiff requests the enter of a judgment against the Settling Defendants, jointly and severally, in an amount of $1,000,000 and/or any other relief that the Court and Jury determines to be just and proper.

Respectfully Submitted:

Thomas W Olick
4014 Crestview Ave
Easton, Pa 18045
610-253-8040

(14)